**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-23803-Civ-BLOOM/TORRES

J.B. HARRIS,

       *Plaintiff*,

v.

VIRAGE CAPITAL MANAGEMENT LP
and TITAN ASSET MANAGEMENT, LLC,

       *Defendants*.

_____/

## ORDER ON DEFENDANT'S MOTIONS FOR SANCTIONS

This matter is before the Court on Defendant's pending motion for sanctions filed in this closed case. [D.E. 49]. Plaintiff has responded in opposition [D.E. 52] to which Defendant replied. [D.E. 60]. Therefore, Defendant's motion is ripe for disposition and has been referred for adjudication. [D.E. 59]. After careful consideration of the motion and relevant authority, and for the reasons discussed below, Defendant's motion is **DENIED** on procedural grounds.

### I.   BACKGROUND

**A.   *Plaintiff's Complaint and its Dismissal***

Plaintiff Harris is a lawyer who, together with his law firm, have been litigating issues relating to Defendant Virage Capital's security interest and entitlement to 40% of gross attorney's fees in certain tobacco-related cases. This litigation has proven to be unsuccessful in federal and state court cases filed in Texas and Florida.

Most recently, Plaintiff filed an action in Florida state court on August 16, 2023, in which he sought to facially challenge for the second time a Texas final judgment.   See Harris v. Virage Cap. Mgmt., LP, No. 23-021459-CA-01 (Fla. 11th Cir. Ct. Aug. 16, 2023).   That case mirrored an earlier action filed in federal court by his co-counsel, Case No. 23-22752-Civ-Altonaga, that was voluntarily dismissed after Judge Altonaga found that the claims asserted were intertwined with and duplicative of claims already litigated in Texas courts.   This state court action, however, remains pending, after Virage Capital moved to dismiss primarily on the doctrines of res judicata and collateral estoppel.

In the meantime, Plaintiff also decided to file this action back in federal court, which was yet another facial challenge to the Texas final judgment. The subject matter of this federal suit mirrored those in these earlier cases, but the sole count for injunctive relief was focused on the claim that Virage Capital should have been enjoined from "interfering" with the disbursement of attorneys' fees owed to Harris notwithstanding the Texas judgment.   That injury was purportedly the result of

Defendants' placing improper liens on the settlements involving Plaintiff's clients, which unduly delayed the clients' payouts and injured Plaintiff by depriving him of his earned legal fees. Notably, however, the complaint did not acknowledge that ancillary litigation over these settlements had been adjudicated in state courts in Texas as well as Florida, going back to 2019. The complaint did not allege any facts showing why any prior judgments or final orders did not preclude in whole or in part any relief through this federal action.

Putting aside the dubious merits of the complaint in light of these proceedings, the amorphous state law claim for "interference with a settlement" was founded on the Court's diversity jurisdiction, purportedly because he is a Florida citizen while the Defendants are Delaware and Georgia limited liability entities.

In response, Defendant Virage Capital moved to dismiss the complaint entirely on the argument that the court lacked diversity jurisdiction. [D.E. 31]. Citing a declaration of its managing director, Virage argued that one of its limited partners (left unidentified in the motion and declaration) was a citizen of the State of Florida by being a Florida limited liability corporation with a sole member being a Florida citizen (also unindentified). Harris objected to this supporting record in his response to the motion, arguing that Virage was playing a shell game by refusing to provide any details over what entity this was. [D.E. 33]. Harris concluded that this was thus a sham motion designed to derail his valid lawsuit.

Before adjudicating the motion, the District Judge Ordered Virage to disclose the identity of this purported Florida entity, under seal if necessary. [D.E. 34].

Virage complied with that Order and disclosed the name and relationship of the entity that deprived the court of subject matter jurisdiction. When no competing evidence was submitted challenging that factual assertion, the Court then granted the motion to dismiss for lack of subject matter jurisdiction and without getting into the merits of the complaint. [D.E. 56]. As the Court explained, "the longstanding rule is that 'the citizenship of an artificial, unincorporated entity generally depends on the citizenship of all members composing the organization.' *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC,* 374 F.3d 1020, 1021 (11th Cir. 2004) (citing *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96 (1990)). Regarding diversity jurisdiction, 'a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens.' *Id.* (citing *Carden,* 494 U.S. at 195-96). Consequently, based on Defendant's filing and pursuant to 28 U.S.C. § 1332(a), this Court lacks jurisdiction over this matter." The case was then Closed, but the Court retained jurisdiction to entertain this motion for sanctions. [D.E. 58].

**B.**     ***Defendant Virage's Motions for Sanctions***

Before the District Judge dismissed the action and while its motion was pending, Defendant Virage filed the pending motion for sanctions. [D.E. 49]. The motion argued that "Mr. Harris filed a pro se form Complaint to re-litigate matters that have already been resolved in in Texas and Florida. As a Florida lawyer, Mr. Harris knows better than to file papers in this Court assuming that 'injunctive relief' is a cause of action (when, in fact, the name gives away the error in that assumption). Similarly, as a Florida lawyer, Mr. Harris knows better than to file

papers in this Court attempting to allege that a tort was committed because of acts plainly excluded by the very definition of a tort. It is clear that the instant case and other similar ones filed by Mr. Harris resulted from a fit of pique and unprofessional obsession, not any actual consideration of the facts, the law, or the Court and Virage Capital's resources. Accordingly, the Court should sanction Mr. Harris under Rule 11 and 28 U.S.C. § 1927. Indeed, sanctions are warranted to redress Mr. Harris's wrongful behavior and deter similar misconduct from a Florida licensed attorney in the future." [D.E. 49 at 1-2].

Notably, the motion certified that "Counsel for Defendant, before filing this motion, conferred with Plaintiff in a good faith effort to resolve the issues raised in the motion. Specifically, and as required by the Rule 11, Defendant timely served a draft of this motion on Mr. Harris and his law firm on October 18, 2023. Mr. Harris, to date, has not responded to the draft of this motion or the service email regarding same. It therefore seems clear Plaintiff opposes the motion." [D.E. 49 at 17].

Virage, however, apparently never actually conferred with Harris prior to filing the motion as contemplated by Local Rule 7.1 and notwithstanding its certification.  As Harris pointed out in his response, no lawyer for Virage every contacted Harris before filing the motion. He acknowledged receiving the draft motion, as required by Rule 11(c)(2), but he denied ever speaking or conferring with any lawyer representing Virage either before service of the draft motion or before the filing of the final motion.

Virage's counsel confirms that, in fact, no separate conferral was had as contemplated by Local Rule 7.1. [D.E. 60 at 1-2].   Instead, Virage argues that it complied with the Court's Local Rule by complying with the more specific safe-harbor provision required by Rule 11: "it is intuitive that the Local Rule is satisfied when an opposing party is afforded three weeks to respond to an unfiltered preview of a to-be-filed motion." And Virage further notes that, after receiving Plaintiff's response to the motion for sanctions, counsel reached out to him specifically to ask if there was resolution that could be had before the motion was adjudicated and Plaintiff rebuffed that effort as "too little too late." [D.E. 60 at 2].

For his part, Plaintiff argues in opposition to the motion that the motion is procedurally defective under the Court's Local Rule and should be denied as such. Further, Plaintiff suggests that Virage's counsel should be the ones sanctioned in the process by wrongfully certifying compliance with the Local Rule when no such compliance was had and also asserting arguments for sanctions that were belied by the record.

Virage's reply maintains that the Local Rule was materially followed by the service of the draft motion for sanctions and, in any event, any error on their part should be excused and the Court should address the merits of the Rule 11 and section 1927 arguments.   Plaintiff has pursued frivolous arguments, filed the action in the wrong forum, and simply does not take no for an answer.   This evidences bad faith on his part requiring sanctions and an injunction against further filings.

## II.   APPLICABLE PRINCIPLES

### A.   *Rule 11 Sanctions*

"The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003) (citation and quotation omitted).   At the same time, "Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 9106 F.2d 533, 538 (11th Cir. 1990) (emphasis in original).

### 1.   *Required Showing for Relief*

Rule 11 sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)).   Federal Rules of Civil Procedure 11(b)(1) and 11(b)(3) state:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . (3) the factual contentions have

> evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .   Fed. R. Civ. Pro. 11(b)(1), 11(b)(3).

Additionally, Federal Rule of Civil Procedure 11(c)(1) states the following:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.   Fed. R. Civ. Pro. 11(c)(1).

"In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would've been aware had he made a reasonable inquiry.  If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.  The reasonableness of the inquiry 'may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the [violative document]; . . . or whether he depended on forwarding counsel or another member of the bar.'"  *Worldwide Primates, Inc.*, 87 F.3d at 1256 (quoting *Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992)); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001).  "Although sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law."  *Baker v. Adelman*, 158 F.3d 516, 524 (11th Cir. 1998) (citations omitted).

### 2.      *Satisfying Safe Harbor Condition Precedent*

Rule 11 incorporates a "safe harbor" provision that provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2).

The advisory committee note to the Rule provides context as to how this subsection of the Rule is designed to work:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of *the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.*

*Id.* Adv. Comte Note, 1993 Amendments (emphasis added).

Rule 11 and principles of due process require that "the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir.1999).   This enforces Rule 11's inherent purpose of "allow[ing] an attorney who violates Rule 11 to correct the alleged violation within twenty-one days without being subject to sanctions." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010); *see also In re Miller,* 414 F. App'x 214, 217 (11th Cir. 2011) ("This notice requirement 'permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them' and to

'withdraw the potentially offending statements before the sanctions motion is officially filed.'") (citing *Storey v. Cello Holdings, LLC,* 347 F.3d 370, 389 (2d Cir. 2003)).

The safe-harbor provision is thus commonly deemed a strict procedural requirement. *Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 142 n.4 (2d Cir. 2002). "Nearly every federal appellate court in the country has held that a Rule 11 motion can be granted only where the movant demonstrates strict compliance with the safe harbor provision." *Rocket Real Est., LLC v. Maestres*, 2017 WL 4303783, at *4 (S.D. Fla. Apr. 10, 2017), *report and recommendation adopted,* 2017 WL 4303784 (S.D. Fla. May 18, 2017), *aff'd,* 749 F. App'x 952 (11th Cir. 2019) (citing in part *Brickwood Contractors Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 389 (4th Cir. 2004)); *Gordon v. Unifund CCR Partners,* 345 F.3d 1028, 1030 (8th Cir. 2003); *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir. 2001); *but see Nisenbaum v. Milwaukee County,* 333 F.3d 804 (7th Cir. 2003)).

### B.     *Section 1927 Sanctions Standard*

Under 28 U.S.C. § 1927, sanctions are appropriate where "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Three essential requirements must be satisfied to impose sanctions under § 1927: (1) the attorney's conduct must be unreasonable and vexatious; (2) the conduct must multiply the proceedings; and (3) the dollar amount of the sanctions cannot exceed the costs incurred because of the

conduct.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997); *Barash v. Kates*, 585 F. Supp. 2d 1347, 1358 (S.D. Fla. 2006).

An attorney unreasonably and vexatiously multiplies proceedings under the statute where the attorney's conduct is "tantamount to bad faith."  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007); *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (stating that "bad faith is the touchstone" of § 1927 sanctions).  A finding of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engaged in tactics that needlessly obstruct litigation of non-frivolous claims.  *Schwartz*, 341 F.3d at 1225; *Barash*, 585 F. Supp. 2d at 1358-59 (explaining that a bad faith determination turns on the objective conduct of the attorney).  However, negligence alone will not suffice for a finding of bad faith.  *Amlong*, 500 F.3d at 1241-42; *Schwartz*, 341 F.3d at 1225 (stating that "something more than a lack of merit is required").  In addition, to meet the second requirement of multiplication of proceedings, the attorney's conduct must result in proceedings that would not have occurred but for the conduct.  *Peterson*, 124 F.3d at 1396.

### III.   ANALYSIS

Upon review of the supporting record, the Court agrees with Plaintiff that the pending motion is procedurally deficient.  Here, Virage certified compliance with Local Rule 7.1 that provides:

> Prior to filing any motion in a civil except, except [enumerated dispositive motions], counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion. . . . Counsel . . . shall certify either  (A) that

counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so; or (B) that counsel for the movant has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, which efforts shall be identified with specificity in the statement (including the date, time, and manner of each effort), but has been unable to do so."

S.D. Fla. Local R. 7.1(a)(3).

The Rule further provides that "[f]ailure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." *Id.*

Virage claims that its certification is materially correct given that it provided written conferral to Plaintiff through its draft Rule 11 motion that was served, and not filed, as per Rule 11(c). But conferral in almost every context is not satisfied with a draft motion. Conferral means a bilateral exchange, either in person, by telephone or other direct communication, where the parties "engage in the meaningful exchange of information and viewpoints." *Taveras v. Fla. Dep't of Trans.,* No. 22-CV-23745, 2023 WL 5428488, at *2 (S.D. Fla. Aug. 23, 2023) ("Local Rule 7.1(a)(3) serves an important function. The purpose of the rule is to ensure judicial economy, prevent courts from wasting time evaluating issues the parties might be in agreement on, inform the Court as to whether it need wait for a response from the opposing party before deciding the motion, and, importantly, force the parties to engage in the meaningful exchange of information and viewpoints") (citing *Osio v. Moros,* No. 21-20706-CIV, 2023 WL 4531264, at *2 (S.D. Fla. July 13, 2023) ("The

conferral requirement of Local Rule 7.1(a)(3) is meant to preserve the Court's and the parties' limited resources by ensuring that a prospective movant resolves a potential issue without engaging in unnecessary motion practice.")).

This Local Rule is not aspirational. To the contrary, it is "mandatory" under the express terms of the Rule. *See Andreu v. Hewlett–Packard Co.,* No. 15-23270-CIV, 2016 WL 1697088, at *4 (S.D. Fla. Apr. 20, 2016) ("Neither the Federal Rules of Civil Procedure nor the Local Rules are aspirational."); *Taveras,* 2023 WL 5428488, at *2.

Consequently, it is entirely appropriate to deny relief on a motion when the Rule has been violated. *See, e.g., Starship 1, LLC v. Sky Support, LLC,* No. 22-20090-CIV, 2023 WL 5231807, at *1 (S.D. Fla. June 14, 2023) ("[The] complete disregard of Local Rule 7.1(a)(3)'s requirements warrants denial of the [p]laintiff's motion[.]"); *Audalus v. Scottsdale Ins. Co.,* 566 F. Supp. 3d 1318, 1320 n.1 (S.D. Fla. 2021) ("Plaintiffs' inadequate good-faith certification is an independent basis for denying this Amended Motion.").

And that is also particularly true when it comes to motions for sanctions. In the discovery realm, throngs of cases deny motions for sanctions under the Court's discovery rules when the movants have violated or ignored the Court's rules on conferral. That is understood without any citation. But with respect to sanctions in a broader Rule 11 or similar context, the failure to comply with conferral rules like ours still warrants the denial of the motion. *See, e.g., Whatley v. World Fuel Services Corp.,* 20-Civ-20993, 2020 WL 4818924, at *4 (S.D. Fla. Aug. 19, 2020) ("given CP's failure to comply with Local Rule 7.1 and to explain the efforts it took to narrow or resolve some of these disputes and the recent developments in this case when

juxtaposed with the underlying action, CP's motion for sanctions must be Denied"); *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2015 WL 1412363, at *5 (S.D. Fla. Mar. 26, 2015) (denying sanctions motion because movant did not comply with Local Rule 7.1 and its meet and confer requirements); *Royal Palm Vill. Residents, Inc. v. Slider*, 8:19-CV-874-CEH-SPF, 2021 WL 8201620, at *7 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted in relevant part,* 8:19-CV-874-CEH-SPF, 2021 WL 4190958 (M.D. Fla. Sept. 15, 2021) ("Further undermining the propriety of Rule 11 sanctions, Defendants' motion fails to comply with Middle District of Florida Local Rule 3.01(g), which requires the movant to confer with the opposing party in a good faith effort to resolve the motion prior to filing it. The likelihood of success of the 3.01(g) conferral process does not factor into the movant's duty to comply with the rule. Accordingly, Defendants' failure to confer with Plaintiffs prior to filing the motions for sanctions is another basis for denying the motion."); *Morroni v. Gunderson*, 169 F.R.D. 168, 171-72 (M.D. Fla. 1996) (noting movants' failure to comply with Local Rule 3.01(g) as one of the bases for the court's order denying Rule 11 motion).

Virage argues, however, that the Court should exercise its discretion, conferred by the Rule itself, to excuse its non-compliance with the Rule because it materially satisfied it with the Rule 11 safe-harbor process. If compliance with that process did not cause Plaintiff to change course, what would? Certainly not a telephone call from counsel himself.

That is not an unreasonable position to take in this context. But it is still a faulty one in this case. First, it is hard to excuse a certificate of conferral that is

plainly incorrect on its face. The conferral certification here did not say it had conferred only through Rule 11; instead, it suggested that actual conferral was had to no avail. As it turns out, that was factually not the case. So that undermines any willingness to look past this problem.

But, second and more substantively, the failure to confer here was more than a technical matter. In this case, at the time the Rule 11 motion was served the argument raised in the motion to dismiss was all about the lack of subject matter jurisdiction. Virage claimed that one of its members was a Florida citizen. On the face of the available record, there does not appear to have been any cause for Plaintiff to know that to be the case. And in support of the motion, a conclusory declaration was filed that never provided any factual detail behind the claim. So at the time when conferral would have been quite relevant, Virage could have informed Plaintiff of that problem and explained why he was wrong to file here.

Indeed, when it came time to move to dismiss, Virage for some reason did not disclose the underlying facts behind its claim. Only in response to the Court's Order directing it to disclose this information did Virage make clear what Florida entity it was relying upon. And, following that disclosure, Virage's motion to dismiss was granted on subject matter jurisdiction grounds.

Virage does not explain, however, how proper conferral on this topic could not have resulted in an earlier dismissal of the action, which in part lies at the heart of the motion for sanctions. Virage argues that this pro se complaint was improper for a series of reasons, but one of which was that Plaintiff was dredging up this very

stale dispute in the wrong forum. So at least in this respect, conferral may have made a difference.

Considering this record, the Court is hard pressed to grant a motion for sanctions based on Plaintiff's violations of the Court's Rules and procedures, while at the same time ignoring a glaring hole in the procedural record supporting the motion. And, contrary to Virage's argument, this failure to confer is not an anomaly when it comes to Rule 11 motions. The safe harbor process is *not* enough as the Advisory Committee Notes to the Rule expressly point out:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of *the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.*

*Id.* Adv. Comte Note, 1993 Amendments (emphasis added).

So the framers of the safe harbor process clearly understood and expected that traditional conferral would be a part of the process required before turning to the remedial measures imposed by Rule 11. Here, that process was overlooked by Virage's counsel. That has consequences, just as Plaintiff's dubious claim for injunctive relief would have had in the event his complaint was not dismissed. Hence, Virage cannot reap the benefit of the Court's Rules on the one hand but ignore another aspect of the Court's Rules on the other.

Therefore, even though the underlying arguments for frivolousness and vexatiousness may have had some appeal, we cannot get there at this point. Nothing in this record is so striking or urgent for the Court to ignore these procedural

problems and get to the merits of the sanctions motion in this closed case. And that is particularly true for this motion that is asking that the Court reach back and analyze procedural history of other cases in other jurisdictions to arrive at a bad faith finding, which is required at least for sanctions to be imposed under the more difficult statutory basis, section 1927. Bad faith in this regard would be hard to attain. Hence, we should not and will not even begin to do so through a motion that is plainly defective.

### IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion for Rule 11 sanctions [D.E. 49] is **DENIED**. Any cross-request for sanctions or fees is also **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of March, 2024.

/s/ Edwin G. Torres
EDWIN G. TORRES
Chief United States Magistrate Judge